IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **1911 Walnut Street, LLC**<br>6501 N. Broad Street, Suite 201<br>Middletown, DE 19709<br><br>　　　Plaintiff,<br><br>　　v.<br><br>**Patrick Higgins**<br>1141 Ocean Forest Lane<br>Seabrook Island, SC 29455<br>*and*<br>**PTHJKB2012, LLC**<br>c/o Registered Agent, Registered Agent Solutions, 838 Walker Road, Suite 21-2<br>Dover, DE 19904<br><br>　　　Defendants. | Docket No.:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff 1911 Walnut Street, LLC ("Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Patrick T. Higgins ("Higgins") and PTHJKB2012, LLC ("PTHJKB2012"), and, in support thereof, avers as follows:

## PARTIES

1. Plaintiff, 1911 Walnut Street, LLC, is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 6501 N. Broad Street, Suite 201, in Middletown, Delaware 19709.

2. Upon information and belief, Defendant Higgins is a citizen and resident of the State of South Carolina who resides at 1141 Ocean Forest Lane, Seabrook Island, SC 29455.

3. Upon information and belief, PTHJKB2012 is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 1141 Ocean Forest Lane, Seabrook Island, SC 29455.

4. Upon information and belief, Higgins is the Manager of PTHJKB2012 and the sole Member thereof.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

6. Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims occurred and the property at issue is located in this District.

7. This Court has personal jurisdiction over Defendants because the contract at issue, defined below, is governed by Pennsylvania law and the Defendants contracted for the purchase of real property in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

### I. The Parties Contract for Defendants' Purchase of Residential Unit 2804 of the Laurel

8. Plaintiff owns an approximately 48-story mixed-use building constructed at 1911 Walnut Street, Philadelphia, PA 19103 called the Laurel on Rittenhouse Square ("Laurel").

9. On February 28, 2019, Plaintiff and PTHJKB2012 entered into a Unit Agreement of Sale for The Laurel Condominium, Residential Unit No. 2804 ("Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

10. The Agreement is governed by the laws of the Commonwealth of Pennsylvania. *See* Ex. A, at § 25.

11. Under the Agreement, Defendants—the "Buyer"—agreed to buy, and Plaintiff—the "Seller"—agreed to sell, Residential Unit No. 2804 ("Unit") for $2,299,995.000 ("Total Purchase Price"). *See id.* at § 3.

    A. <u>In the Event of a Breach by Defendants, the Agreement Provides for Liquidated Damages in the Amount of $459,999.00 Plus Interest, Attorneys' Fees, and Costs</u>

12. Defendants were required to provide Plaintiff with a Promissory Note for $459,999.00 ("Deposit"), which was 20 percent of the total purchase price. *See id.* at § 3(a).

13. The Promissory Note itself is included as Exhibit D to the Agreement. *See id.* at Ex. D.

14. The Agreement provides that "[i]n the event that either party requests or demands release of the Deposit to it and the other party contests such release, the party determined not to be entitled to the Deposit shall pay any and all costs and expenses incurred by the party determined to be entitled to the Deposit in resolving such dispute, including attorneys' fees and court, arbitration or mediation costs." *See id.* at § 3(b).

15. It further provides that "[i]f SELLER is entitled to receipt of the Deposit pursuant to the terms of this Agreement, the entire principal amount of the Promissory Note with interest thereon, shall be immediately due and payable by BUYER." *See* Ex. A at § 3(c).

    B. <u>The Agreement Provides for the Extension of the Settlement Date Based on a Force Majeure Event and Restricts Defendants' Right to Terminate the Agreement</u>

16. Plaintiff was still constructing the Laurel at the time of the Agreement.

17. In recognition of the ongoing construction and the scale and magnitude thereof, the Agreement provided for a flexible settlement date.

18. In particular, Section 5(a) provides as follows:

BUYER acknowledges that SELLER is constructing the Property, including the Premises. Settlement ("Settlement") shall be held after Substantial Completion of the Residential Unit to the extent and in the condition described herein. "Substantial Completion" means that the agreed-upon improvements to be done by SELLER have been completed subject only to completion of minor finishing, adjustment of equipment, and other minor construction aspects of construction that will not materially interfere with the use and occupancy of the Residential

>Unit. Settlement shall occur at a location and on such a date **("Settlement Date")** to be set forth in a written notice from SELLER to BUYER, provided that the Settlement Date shall not be sooner than thirty (30) days from the date of such notice. The estimated settlement date, based on the state of construction as of the date hereof, shall be <u>November 1, 2021</u> (the "Estimated Settlement Date"). SELLER presently estimates (but does not represent or warrant) that the Residential Unit will be Substantially Complete by the Estimated Settlement Date. If SELLER shall fail to complete its work and schedule Settlement by the Estimated Settlement Date for any reason, whether or not within SELLER's control, SELLER shall not be subject to any liability to BUYER, except as expressly provided herein. Except as otherwise expressly set forth herein, SELLER's failure to complete its work and schedule Settlement by the Estimated Settlement Date shall not in any respect affect the validity or continuance of this Agreement or any obligation of BUYER hereunder.

*Id.* at § 5(a) (emphasis in original).

        19.     Section 5(b) further states as follows:

>SELLER agrees to use commercially reasonable efforts to deliver the Residential Unit Substantially Completed to BUYER on or before the Estimated Settlement Date. if the SELLER notifies BUYER that the Unit shall not be delivered to BUYER in Substantially Complete condition on or before the date which is twelve (12) months after the Estimated Settlement Date (the "Outside Delivery Date"), subject to force majeure (which includes, but is not limited to, delays caused by acts of God, unusual weather conditions, the unavailability of materials, labor problems, or governmental orders), which force majeure event shall have the effect of extending the Outside Delivery Date for each day of delay, then BUYER shall have the right to cancel this Agreement by notice thereof to SELLER within fifteen (15) days after BUYER receives SELLER's notice of the delay, as BUYER's exclusive remedy. In the event BUYER cancels this Agreement pursuant to this Paragraph 6(b), BUYER shall be repaid the Deposit (with interest earned thereon, if any) and neither party shall have any further rights, obligations or claims hereunder.

*See id.* at § 5(b).

        20.     Defendants' right to terminate the Agreement was limited to that specifically delineated circumstance and Defendants could not otherwise terminate the Agreement for convenience.  *See id.*

      C.      <u>In the Event of Non-Material Destruction to the Unit, Defendants May Proceed to Settlement As-Is or Extend Settlement Until Plaintiff Completes the Repair</u>

21.      The Agreement also set forth the parties' rights and obligations in the event of loss, damage, or destruction to the Unit. *See id.* at § 11.

22.      Under the Agreement, loss, damage, or destruction to the Unit was "material" only where "a reasonable estimate of the cost or repair thereof shall exceed an amount equal to 25% of the Purchase Price and damage or destruction to the Property shall be 'material' if a reasonable estimate of the cost of repair thereof shall exceed $500,000." *See* Ex. A at § 11(a).

23.      Plaintiff, in such a scenario, had the right to either terminate the Agreement by written notice to Defendants *or* "repair the loss . . . and the Settlement Date shall be extended for such reasonable time as is required to repair such damage or destruction." *See id.* at § 11(a)-(b).

24.      Defendants did not have a right to terminate the Agreement as a result of non-material loss, damage, or destruction. *See id.* at § 11(b).

25.      In the event that Plaintiff did not terminate the Agreement, Defendants had only two options: (1) wait to settle until Plaintiff repaired the Unit or (2) elect "by written notice to [Plaintiff] prior to the commencement of such repair work . . . to proceed with Settlement, in which event BUYER shall accept the Premises subject to such loss[.]" *See id.*

      D.      <u>Section 12 of the Agreement Provides for Plaintiff's Remedies in the Event of Defendants' Default</u>

26.      Section 12 of the Agreement addresses Plaintiff's rights and remedies in the event that Defendants defaulted on the Agreement.

27.      It provides that "[i]n the event of failure by BUYER to perform and comply with the terms and provisions of this Agreement to be performed and complied with by BUYER within the time or times provided for herein, then, and in that case, **all sums paid by BUYER on**

*account of the Total Purchase Price (including the Deposit and interest accrued thereon (if any)) shall be retained by SELLER as liquidated damages for such breach* and there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void." *Id.* at § 12 (emphasis added).

28. It characterizes these liquidated damages as follows:

> The provisions herein agreed upon for liquidated damages are bona fide provisions for such *and* are not a penalty, the parties understanding that by reason of the withdrawal of the Premises from sale to the general public at a time when other parties would be interested in purchasing the Premises, SELLER will have sustained damages if BUYER defaults, which damages will be substantial but will not be capable of determination with mathematical precision and, therefore, as aforesaid, the provisions for liquidated and agreed upon damages have been incorporated into this Agreement as provisions beneficial to both parties hereto.

*Id.*

    E.    <u>The Parties Amend the Agreement on October 3, 2019</u>

29. On October 3, 2019, the parties entered into an Addendum to Unit Agreement of Sale ("Addendum"). A true and correct copy of the Addendum is attached hereto as **Exhibit B**.

30. The Addendum extended the time for Defendants to select options for the Unit from September 30, 2019—as originally stated in Section 2(b) of the Agreement—to April 1, 2020. *See id.* at § 2.

31. The Addendum was similarly governed by the laws of the Commonwealth of Pennsylvania. *See id.* at § 5.

32. All other provisions of the Agreement remained in force. *See id.* at § 3.

**II.**    <u>**Defendants Decide They Do Not Want to Proceed in Purchasing the Unit in Accordance with the Agreement**</u>

33. The Laurel was a massive endeavor that Plaintiff was in the process of constructing in 2019, and, as a result, the Agreement provided for years' long delay between the execution thereof occurrence of the settlement.

34. The Agreement accordingly contemplated that Plaintiff would not substantially complete the Unit until on or around November 2, 2022, barring a force majeure event. *See* Ex. A, at § 5(b).

35. Plaintiff believed that, notwithstanding the period of time between the execution of the Agreement and the time of settlement, Defendants would honor their obligations under the Agreement.

36. However, upon information and belief, during that period of time, Defendant Higgins decided that he did not want to live in Philadelphia or proceed with the legally binding Agreement he entered into with Plaintiff.

37. Upon information and belief, Defendants did not want to lose the Deposit, which they understood would be rightfully due and owing to Plaintiff with interest upon Defendants' improper breach of the Agreement, and thus began a series of attempts to unlawfully terminate the Agreement at Plaintiff's expense.

### III. Defendants Unlawfully Attempt to Terminate the Agreement in Response to Force Majeure and Casualty Delays

38. During the time in which Plaintiff was constructing the Laurel, the United States was impacted by the COVID-19 Pandemic.

39. On or about March 6, 2020, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency that identified the COVID-19 Pandemic as a disaster emergency affecting the entire Commonwealth.

40. On or about March 13, 2020, the President of the United States declared a national emergency due to the COVID-19 Pandemic.

41. On September 26, 2022, and in accordance with Section 5(b) of the Agreement, Plaintiff informed Defendants that the Unit would not be substantially complete until December

26, 2022—the new Outside Delivery Date—as a result of a force majeure delay stemming from the Pandemic.

42. Defendants responded on October 4, 2022, by attempting to terminate the Agreement.

43. Defendants, however, only had the right to terminate the Agreement *if* two conditions were met: Plaintiff would have to inform Defendants that it would *not* substantially complete the Unit on December 26, 2022, *and* Defendants would *then* need to provide Plaintiff with notice of cancellation "within fifteen (15) days after" receipt of the delay. *See* Ex. A, at § 5(b).

44. Plaintiff intended to substantially complete the Unit by the December 26, 2022, Outside Delivery Date, and, as a result, informed Defendants that they did not have the legal right to terminate the Agreement on October 4, 2022.

45. The Agreement thus remained in-force and the parties proceeded as such.

46. On November 5, 2022, there was a casualty at the Laurel in the form of a water infiltration event, which impacted the flooring in the Unit and required replacement flooring.

47. Plaintiff submitted a claim to its insurance carrier for the incident and opted to "repair the loss," under Section 11(b).

48. As a result, the "Settlement Date [was] extended . . . for such reasonable time as is required to repair such damage or destruction." *See* Ex. A, at § 11(b)

49. On December 2, 2022, Plaintiff informed Defendants of the non-material destruction and provided Defendants with the option of selecting replacement flooring, which Plaintiff would then proceed to install in the Unit.

50. Under Section 11(b) of the Agreement, Defendants had the option of either waiting until Plaintiff repaired the unit or electing "by written notice to [Plaintiff] *prior to the commencement of such repair work . . .* to proceed with Settlement, in which event [Defendants] shall accept the Premises subject to such loss[.]" *See* Ex. A, at § 11(b).

51. Defendants did not provide Plaintiff with such written notice within 15 days of the December 2, 2022, notice.

52. Rather, on December 2, 2022, Defendants selected replacement flooring for the Unit that was more expensive than the original flooring identified in the Agreement, and upon which the Total Purchase Price was based.

53. Plaintiff agreed to supply the more expensive replacement flooring at no additional cost as a courtesy to Defendants.

54. Defendant Higgins thanked Plaintiff for the "great visit" that day.

55. On December 15, 2022, Plaintiff sent Defendants an Amendment to Unit Agreement of Sale ("Proposed Amendment") based on the parties' December 2, 2022, agreement. A true and correct copy of the Proposed Amendment is attached hereto as **Exhibit C**.

56. The Proposed Amendment provided for an Estimated Settlement Date of March 31, 2023, based on the casualty delay.

57. Defendants did not respond to, or even acknowledge receipt of, the Proposed Addendum.

58. Plaintiff continued its attempts to contact Defendants with additional calls and emails, including an email on December 19, 2022.

59. On December 22, 2022, Defendant Higgins acknowledged receipt of the prior communications, but claimed that he was unable to reply earlier due to some unidentified illness.

60. On February 1, 2023, Defendants' counsel sent Plaintiff's counsel a letter purporting to terminate the Agreement and demanding return of the Deposit.

61. Plaintiff's counsel informed Defendants that they did not have a right to terminate the Agreement and that Plaintiff remained ready, willing, and able to convey the Unit to Defendants on the March 31, 2023, Estimated Settlement Date.

62. Defendants refused to proceed to Settlement and have wholly repudiated their obligations under the Agreement.

63. It is Defendants' obstinate refusal to perform in accordance with the Agreement, or to accept the consequences under the terms thereof, that necessitates this instant lawsuit.

## COUNT ONE
## BREACH OF CONTRACT

64. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

65. The Agreement, together with subsequent modifications, is a valid and binding contract between Plaintiff and Defendants.

66. Plaintiff has performed all of its material obligations under the Agreement.

67. As fully detailed above, Defendants have materially breached the Agreement by attempting to improperly terminate the Agreement on February 1, 2023.

68. Defendants have also materially breached the Agreement by failing to tender payment for the Total Purchase Price of the Unit at the March 31, 2023, Settlement.

69. Additionally, the Agreement is governed by the laws of the Commonwealth of Pennsylvania, which imposes on all contracting parties an obligation of good faith and fair dealing.

70. Defendants have breached the implied covenant of good faith and fair dealing by, *inter alia,* refusing to honor their obligations under the Agreement and repeatedly attempting to improperly terminate the Agreement.

71. Additionally, Defendants breached the implied covenant of good faith and fair dealing by selecting more expensive replacement flooring for the Unit—which Plaintiff provided at no additional cost to Defendants—with full awareness of the fact that Defendants would subsequently attempt to renege on the Agreement.

72. As a result and proximate cause of Defendants' wrongful conduct, Plaintiff has incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants in excess of $75,000 together with interest, costs, attorney's fees, lost profits, and such other and further relief this Court deems just.

## COUNT TWO
## DECLARATORY JUDGMENT

73. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

74. The Agreement provides that, in the event of Defendants' default, Plaintiff may retain the Deposit and any accrued interest thereon as liquidated damages for the default.

75. Defendants have contested Plaintiff's right to retain the Deposit and have demanded that Plaintiff return the Deposit to Defendants.

76. As discussed, Defendants materially breached the Agreement and, as a result, are not entitled to the return of their Deposit.

77. There is a live and justiciable case or controversy relating to the parties' rights and obligations with respect to the Deposit.

78. The controversy between the parties is not theoretical or dependent upon events that might occur in the future; on the contrary, the controversy is live, real, and Defendants have demanded immediate payment of the Deposit, which is not due to them under the Agreement.

79. Should the Court issue a declaratory judgment, such judgment would adjudicate the legal rights and/or obligations of the parties regarding the retention of the Deposit and will end the controversy and uncertainty that currently exists between Plaintiff and the Defendants.

80. No other parties have any legal claim or interest affected by the declaratory relief sought in this count, such that no other party not joined in this action would be prejudiced should the Court issue a declaratory judgment.

WHEREFORE, Plaintiff demands a declaratory judgment from this Court declaring that Defendants were in default of the Agreement, Plaintiff is not required to return the Deposit to Defendants and Plaintiff is, instead, entitled to keep the Deposit and any interests thereon as liquidated damages for Defendants' breach, and is further entitled to recover attorneys' fees and costs incurred with respect to its receipt of the Deposit.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | COZEN O'CONNOR |
| Date: November 14, 2023 | BY: */s/ Matthew A. Glazer* <br> Matthew Glazer (No.204540) <br> Arianna K. McLaughlin (No. 328142) <br> One Liberty Place <br> 1650 Market Street, Suite 2800 <br> Philadelphia, PA  19103 <br> (P) (215) 665-5566 <br> (F) (215) 701-2057 <br> mglazer@cozen.com <br> amclaughlin@cozen.com |
|  | *Attorneys for Plaintiff, 1911 Walnut Street, LLC* |